### SOUTHWESTERN SURETY INSURANCE CO. v. FIRST NAT. BANK OF RYAN.

No. 10640—Opinion Filed May 9, 1922.

Rehearing Denied July 11, 1922.

(Syllabus.)

Guardian and Ward—Misappropriation of Funds by Guardian—Payment of Shortage by Surety—Subrogation—Action by Surety Against Beneficiary of Misappropriation—Sufficiency of Evidence.

Record examined, and held, that the trial court erred in sustaining a demurrer to plaintiff's evidence and rendering judgment for the defendant for costs.

Error from District Court, Jefferson County; Cham Jones, Judge.

Action for money by the Southwestern Surety Insurance Company against the First National Bank of Ryan. Judgment for defendant, and plaintiff brings error. Reversed, with directions.

W. Y. Dilley and Bridges, Vertrees & Anderson, for plaintiff in error.

Green & Pruet, for defendant in error.

KANE, J. This was an action for the recovery of money commenced by the plaintiff in error, plaintiff below, against the defendant in error, defendant below.

After the plaintiff in error had introduced its evidence and rested, the trial court sustained a demurrer thereto and rendered judgment in favor of the defendant for costs, to reverse which this proceeding in error was commenced.

The petition of the plaintiff alleged and the evidence reasonably tended to show the following brief summary of facts: W. F. Spain was the duly appointed and acting guardian of his minor son, Franklin G. Spain, the guardianship proceeding pending in the county court of Jefferson county. Under the orders of said court, the guardian sold land belonging to his ward, receiving therefor the sum of $5,760, the plaintiff being surety on the guardian's bond filed during the sale proceedings. The purchase price of the land was deposited by the guardian in the People's Bank & Trust Company, at Ryan, Okla. The guardian, being indebted to the defendant herein on a promissory note signed in his private capacity in the sum of $973.93, drew a check upon the funds of his ward signed in his capacity as guardian, thereby discharging his private account with the defendant. Thereafter the guardian filed an annual report showing that he had appropriated to his own use a large part of his ward's estate. Thereafter, upon a final report, the county court found that the guardian had squandered the funds of his ward and was indebted to him in the sum of $5,239.50, and rendered judgment accordingly. From this judgment the surety company appealed to the district court, where the findings of the county court as to the sum due was modified, the guardian's liability being fixed at $2,750, which sum was paid by the surety. Thereafter the county court entered its final judgment fixing the liability of the guardian as determined by the district court and reciting payment thereof by the surety company. Thereafter this action was commenced by plaintiff, claiming the right to be subrogated to all the rights the minor ward would have had in the premises if the shortage of the guardian had not been paid. Counsel for plaintiff in error present and summarize their grounds for reversal in their brief as follows:

"(1) The trial court erred in overruling the motion for a new trial.

"(2) The court erred in sustaining the demurrer to the plaintiff's evidence."

These two assignments of error, they say, cover the whole case and can be conveniently argued together under the following headings:

"(1) Following Trust Funds.

"(2) Subrogation of the Surety.

"(3) No Limitation of Action.

"(4) Sufficiency of the Evidence."

As a careful examination of the briefs of counsel for the respective parties discloses that there is no substantial difference of opinion between them on any law question arising under the first three subheads, we will confine ourselves to an examination of the question of fact presented by the fourth subhead, to wit: the "Sufficiency of the Evidence."

As we understand counsel for defendant in error, his sole claim is that the evidence was insufficient to support a judgment in favor of the plaintiff because it was deficient in the following particulars: They say in substance:

"The only evidence offered by plaintiff in error as to the items making up the shortage were the judgments of the county and district courts referred to in our statement of the case. The only thing conclusively shown by these judgments was the allowance of the guardian, on appeal, of an additional credit of $2,500. Of what items did this credit consist? The record is silent, but it is fair to presume that he had claimed credits in the county court which were disallowed, but afterwards allowed by the district court on appeal. The guardian states that he had borrowed money from defendant bank to improve the allotments of his ward. We attempted to prove that the defendant had been furnishing guardian money for the benefit of his ward, for the support and maintenance of said ward, to which objection was sustained. We, therefore, submit that it was only fair to assume that these equities in favor of the guardian had been allowed on appeal, in a judgment rendered by the same judge who heard such appeal and sustained this demurrer."

From this we gather that it is the contention of counsel that inasmuch as the action of the county court finding the guardian to be in default to his ward in a large sum was subsequently modified by the district court finding the guardian to be in default in a smaller sum, the presumption arises that the particular item sued on herein was claimed by the guardian and allowed by the district court as a proper charge against the estate and that this accounts in part for the modification of the former judgment.

This contention seems to us to be wholly untenable.

There is no evidence in this record showing that the guardian ever sought to have this item allowed as a claim against the estate of his ward, and certainly no presumption will arise that such a claim would be allowed if it had been presented for allowance. In the trial of this case the guardian testified, in substance, as follows:

"My son, Franklin G. Spain, was not indebted to the First National Bank in the sum of $979.73. As an individual, I was indebted to the bank in that sum."

It is quite true that upon cross-examination the witness testified as follows:

"The First National Bank loaned me the money to buy the lumber to build two houses on this ward's land; that was part of the indebtedness. I couldn't say about what part; I charged in the report $480 for the two houses, but nothing like what they cost me; the fact is, I didn't calculate to know just what they cost me, but am sure somewhere around $500 or $600 apiece; that is what I had reference to a while ago."

But giving this evidence the relevancy claimed for it by counsel, it merely shows that the guardian, at most, only claimed that the sum of $480 of the amount borrowed from the First National Bank was charged in his report as a proper claim against his ward.

Certainly no presumption could possibly arise that more than this amount was allowed.

In these circumstances it is clear that, even conceding counsel's contention on this point, the entire claim of the plaintiff would not be defeated.

In these circumstances, it was error to sustain a demurrer to the evidence as a whole.

Judgment of the trial court is therefore reversed, with directions to overrule the demurrer to the evidence and to proceed as herein indicated.

HARRISON, C. J., and JOHNSON, MILLER, and KENNAMER, JJ., concur.